UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 4:21-CR-284 |
| § | |
| JAMES AUBREY ZACHARY WASSON § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant James Aubrey Zachary Wasson's Motion to Suppress Evidence and Request for Evidentiary Hearing. (Dkt. 41). Wasson, who is charged with sexual exploitation of a child, transportation of child pornography, and possession of child pornography, seeks to suppress statements and evidence that Wasson alleges was obtained in violation of his Fourth and Fifth Amendment rights. The Government filed a response to the motion to suppress. (Dkt. 46). The Court conducted a suppression hearing on May 23rd, 2023. After considering the motion, response, evidence, and applicable law, the Court finds that Wasson's motion should be **DENIED**.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Homeland Security Investigations ("HSI") Special Agents ("SA") Nathan Curry and Laura Gill testified at the suppression hearing, as did Digital Forensics Analyst Jeffery Chappell. (Dkt. 53). Evidence admitted at the hearing included photographs taken from Wasson's Dropbox account, photographs of Wasson's apartment building, and the full audio recording of Wasson's interrogation. (Dkts. 42, 50). The Court concludes that the

Government provided credible evidence supporting the factual record as described in the Government's response to the motion to suppress. Accordingly, the Court finds that the following facts have been established by the credible evidence.

The National Center for Missing and Exploited Children ("NCMEC") received a report from Dropbox, Inc. that four images of suspected child pornography had been uploaded to a Dropbox account. SA Curry was tasked with investigating the "CyberTip" issued by the NCMEC regarding the account. After obtaining a federal search warrant and obtaining access to the full account, SA Curry discovered multiple images of child pornography—including a sequence of images of a prepubescent girl (the "Minor Victim") and an adult male with distinctive tattoos that had been taken the previous year. The account also contained a folder of images of an adult man with the same tattoos, titled "me."

Comcast identified the IP addresses associated with the account. Both IP addresses were associated with physical addresses at which Wasson formerly or currently resided. A photograph of Wasson taken from a previous arrest and a photograph of Wasson on Facebook matched the images in the Dropbox folder titled "me." During his investigation, SA Curry learned that Wasson had an outstanding warrant for violating parole.

SA Curry then surveilled the Spring, Texas apartment building that was associated with Wasson's IP address. There, SA Curry saw a man who matched Wasson's description on the balcony of one of the apartments. SA Curry called for backup. Once Wasson left the apartment, SA Curry ordered Wasson to lay on the ground, handcuffed Wasson, and seized

Wasson's Android-style cell phone. Wasson was ordered to wait in SA Curry's vehicle while SA Curry called to confirm Wasson's parole violation.

Wasson and the SAs then relocated to Wasson's apartment. Once they were inside the apartment, SA Curry removed Wasson's handcuffs and began interrogating him. The interrogation, which was recorded, lasted a little over an hour and a half. During the interrogation, Wasson identified the Minor Victim as the daughter of his ex-girlfriend's sister.

SA Curry later interviewed the Minor Victim's mother, who identified her daughter in the photographs. The Minor Victim was also interviewed; she stated that she remembered the pictures being taken and that the episode frightened her.

Wasson has now filed the pending motion to suppress (1) Wasson's statements on the date of his arrest; (2) the password to Wasson's cellphone; (3) the images and videos found on Wasson's phone; (4) the identity and address of Wasson's ex-girlfriend, her niece, and her sister; (5) testimonial evidence from those three individuals incriminating Wasson; and (6) photographs and any physical evidence obtained from the home of Wasson's ex-girlfriend's niece. For the reasons discussed below, the Court disagrees with these arguments and the motion to suppress is **DENIED**.

## II.    APPLICABLE LAW

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "Because the Fourth Amendment itself contains no enforcement mechanism, the exclusionary rule developed

as a judicially-created remedy to safeguard Fourth Amendment rights." *United States v. Edmond*, No. 18-cr-00091-01, 2018 WL 4178228, at *3 (W.D. La. Aug. 6, 2018) (citing *Davis v. United States*, 564 U.S. 229, 236 (2011)). "In general, the exclusionary rule prohibits the introduction of evidence at trial that is derivative of an unconstitutional search or seizure and thereby deters police misconduct." *Id*. (citing *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005)). "Under the fruit of the poisonous tree doctrine, all evidence derived from an illegal search or seizure must be suppressed unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." *Id.* (citing *United States v. Jones*, 234 F.3d 234, 243–44 (5th Cir. 2000)). "Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [his] constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

The Fifth Amendment to the United States Constitution in relevant part states, "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court found that an individual's Fifth Amendment privilege against self-incrimination is "jeopardized" when he or she is in custody and subjected to questioning. 384 US 436, 478 (1966). Thus, the Supreme Court detailed the list of rights of which an individual in custody must be made aware: "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of any attorney, either retained or appointed." *Id*. at 479.

A defendant must expressly and unambiguously invoke these rights. *See Berghuis v. Thompkins*, 560 US 370, 381 (2010). Government actors must then strictly honor any such invocation. *See Miranda*, 384 US at 479 (1966). But an individual may also "knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Ibid*. When a defendant seeks to suppress a statement he or she made, "the state bears the burden of proving by a preponderance of the evidence that a defendant has waived the protections established by Miranda." *Self v. Collins*, 973 F2d 1198, 1206 (5th Cir 1992), citing *Colorado v Connelly*, 479 US 157, 168–69 (1986).

### III. ANALYSIS

#### A. Wasson's Fourth Amendment rights were not violated.

Wasson argues that SA Curry violated his Fourth Amendment rights by entering his home without a search warrant and without his consent. (Dkt. 41). The Court disagrees. The evidence presented during the suppression hearing established that SA Curry had Wasson's consent to enter his home.

During the suppression hearing, SA Curry testified that he arrested Wasson in the courtyard of Wasson's apartment building and that Wasson was temporarily detained in SA Curry's vehicle while Wasson's warrants were being confirmed by telephone. SA Curry then offered Wasson a choice as to the location of his interrogation—the vehicle, in full sight of his neighbors, or his apartment. SA Curry testified that Wasson chose the apartment. Wasson's apparent consent to the agents entering his apartment is reflected in the facts that Wasson did not struggle when moving from the vehicle to the apartment, and that Wasson showed the agents where they could obtain a key to the apartment. The

undisputed facts alone—*i.e.*, no struggle, no broken-down door—undermine Wasson's Fourth Amendment argument. The Court further finds that the testimony of SA Curry, corroborated by the testimony of SA Gill (who witnessed most but not all of the events under review here), both of whom testified that Wasson chose to conduct the interrogation in his apartment, is credible, and Wasson's claim that he did not consent to the agents entering his apartment is not credible.

Wasson's Fourth Amendment rights were not violated here. Thus, Wasson's motion to suppress evidence on the basis of alleged Fourth Amendment violations is DENIED.

### B. Wasson's Fifth Amendment rights were not violated.

Wasson also argues that his Fifth Amendment rights were violated throughout his interrogation—prior to SA Curry reading his *Miranda* warnings, after the *Miranda* warnings, and after Wasson claims to have invoked his right to remain silent. The Government will not seek to admit any of the statements Wasson made before his *Miranda* warnings were read to him. (Dkt. 46 at 7). As for Wasson's statements after receiving his *Miranda* warnings, the Court finds that (1) Wasson voluntarily waived his *Miranda* rights; (2) Wasson's statements during his interrogation were not unduly coerced by SA Curry; and (3) Wasson did not invoke his right to remain silent during the interrogation.

Wasson raises several points in support of his argument that his waiver of *Miranda* rights was involuntary and the product of coercion. Each point is discussed below.

Wasson first argues that "[t]he entirety of the interrogation was conducted during a violation of [his] Fourth Amendment rights." (Dkt. 41 at 17). As discussed above, the Court finds that no Fourth Amendment violation occurred here. If anything, giving Wasson the

option of being questioned in his apartment—as opposed to a parked car in view of his neighbors or a police station—would appear to lessen the risk of undue coercion.

Wasson then argues that "[t]he tactic and tone of the interview was coercive and deceiving." (Dkt. 41 at 17). Specifically, Wasson argues that SA Curry initially asking about Wasson's phone and email use before asking about the Dropbox account amounted to Wasson being "intentionally kept in the dark about the purpose of SA Curry's interview." (Dkt. 41 at 18-19). The Court disagrees. "A suspect's waiver of *Miranda* rights is not invalid merely because police interrogators did not advise him of the subject matter of the upcoming interrogation." *Barnes v. Johnson*, 160 F.3d 218, 223 (5th Cir. 1998), citing *Colorado v. Spring*, 479 U.S. 564, 574 (1987). The audio recording of the interrogation makes clear that SA Curry did not employ "deceptive tactic[s]," (Dkt. 41 at 18), or make any effort to trick Wasson. (Dkt. 42).

Wasson further argues that he was "physically and mentally overpowered" during his interrogation. (Dkt. 41 at 17). On the contrary, the audio recording of the interrogation and the evidence presented during the suppression hearing establish that Wasson—while understandably distressed—was not overpowered by the agents conducting the interrogation. (Dkt. 42). If anything, the agents repeatedly attempted to calm Wasson down and assure him that "no harm has come to [him] and no harm will come to [him]." (Dkt. 42 at 14:06). The evidence before the Court makes clear that the sources of Wasson's distress were shame over his alleged actions and fear for his future, neither of which were needlessly or maliciously stoked by the agents conducting the interrogation.

Finally, Wasson argues that he "attempted to end the interview [and that] SA Curry did not scrupulously honor [his] request." (Dkt. 41 at 17). Wasson specifically refers to his statements "can we just go now," followed by "go to jail," when SA Curry confronted him with images of the Minor Victim. (Dkt. 42 at 32:33). Wasson claims that, upon making these statements, he "invoked his right to remain silent." (Dkt. 41 at 20). The Court disagrees.

The standard for determining whether a suspect invokes his right to remain silent is identical to the standard for determining whether a suspect invokes his right to counsel. *See Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010). Thus, a suspect must invoke his right to remain silent "unambiguously." *Davis v. United States*, 512 U.S. 452, 459 (1994). There is no such unambiguous invocation here. Wasson's statements, which he made while being confronted with images of the Minor Victim, could reasonably have been interpreted as a confession. And, importantly, Wasson continued answering questions without pause; no further mention was made of his supposed desire to remain silent. (Dkt. 42). The Court finds that SA Curry was not obligated to cease questioning Wasson following the statements at issue. *See id.* at 461-62 ("If the suspect's statement is not an unambiguous or unequivocal request [], the officers have no obligation to stop questioning him."). Nor was SA Curry obligated to "ask questions to clarify whether the accused wants to invoke his [] *Miranda* rights." *Berghuis*, 560 U.S. at 381-82, citing *Davis*, 512 U.S. at 461-62.

Wasson's Fifth Amendment rights were not violated during the interrogation. Thus, Wasson's motion to suppress evidence on the basis of alleged Fifth Amendment violations is DENIED.

## CONCLUSION

For the reasons stated above, the Court finds that Wasson's Fourth and Fifth Amendment rights were not violated during his arrest and interrogation. Accordingly, Wasson's Motion to Suppress (Dkt. 41) is **DENIED**.

SIGNED at Houston, Texas on June 16, 2023.

                                                  GEORGE C. HANKS, JR.
                                        UNITED STATES DISTRICT JUDGE